V. James DeSimone (SBN: 119668)
vjdesimone@gmail.com
Carmen D. Sabater (SBN: 303546)
cds820@gmail.com
Ryann E. Hall (SBN: 306080) Of-Counsel
rhall@bohmlaw.com
Melika Amini (SBN: 354764) Of-Counsel
mamini@bohmlaw.com
**V. JAMES DESIMONE LAW**
13160 Mindanao Way, Suite 280
Marina del Rey, California 90292
Telephone:  310.693.5561
Facsimile:   323.544.6880
VJD000164@bohmlaw.com

Attorneys for PLAINTIFF,
AARON DEQUAN WIGGINS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON DEQUAN WIGGINS<br><br>PLAINTIFF,<br><br>v.<br><br>COUNTY OF RIVERSIDE, a municipal entity; SHERIFF CHAD BIANCO, an individual; and DOES 1-10, inclusive,<br><br>DEFENDANTS. | Case No: 5:24-cv-02405<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES**<br>   1. **Deliberate Indifference to Serious Medical Condition (42 U.S.C. § 1983)**<br>   2. **Municipal Liability for Unconstitutional Custom or Practice (42 U.S.C. § 1983)**<br>   3. **Violation of the Bane Civil Rights Act (Cal. Civ. Code § 52.1)**<br>   4. **Intentional Infliction of Emotional Distress**<br>   5. **Negligence; and**<br>   6. **Negligent Hiring, Supervision, Retention, and Training**<br><br>**DEMAND FOR JURY TRIAL** |

PLAINTIFF AARON DEQUAN WIGGINS (hereinafter "Mr. Wiggins" or "Plaintiff") respectfully submits this COMPLAINT for damages against Defendants COUNTY OF RIVERSIDE (hereinafter "COUNTY"), SHERIFF CHAD BIANCO (hereinafter "BIANCO"), and DOES 1-10 (hereinafter collectively "DEFENDANTS"), inclusive, alleges as follows:

## NATURE OF ACTION

1.     This is a civil lawsuit brought by Plaintiff, Mr. Wiggins, who was a victim of cruel and unusual punishment, while in the care and custody of Larry D Smith Correctional Facility Banning and Riverside County Sheriff's Department, inadequate training, hiring, retention, and discipline for the subject correctional deputies and jail staff, as part of a custom and practice and a disregard for human life and individuals' health and safety practiced by Defendants COUNTY, SHERIFF BIANCO, DOES 1-5, and Supervisor DOES 6–10. This claim is also brought against Defendants COUNTY, SHERIFF BIANCO, and Supervisor DOES 6–10 for ratifying, encouraging, and/or supporting the illegal and/or wrongful conduct of Defendants DOES 1-5, and for Defendants COUNTY, SHERIFF BIANCO, and Supervisor DOES 6–10 complete failure to adequately train or otherwise prevent their correctional deputies, medical personnel, jail staff, employees and/or agents from committing illegal acts and abusing their inherent powers as officers of the law.

2.     On or around December 22, 2023, Mr. Wiggins, whose medical records indicate a history of seizures, was incarcerated and in the care of Larry D Smith Correctional Facility Banning and Riverside County Sherriff's Department, when he fell from his assigned top bunk bed after displaying "seizure like" activity, hitting his head on the concrete on the ground. Mr. Wiggins was nearly paralyzed and suffered serious injuries, including but not limited to, head trauma, laceration, skull fracture, neck fracture, possible cervical fracture, brain injury, and balance problem.

**PLAINTIFF COMPLAINT FOR DAMAGES**

*Wiggins v. County of Riverside, et al.*                    V. James DeSimone, Esq.
Case No.:  5:24-cv-02405                              Carmen D. Sabater, Esq.

3.     Defendants DOES 1-5, Larry D Smith Correctional Facility Banning and Riverside County Sheriff's Department personnel were aware of Mr. Wiggins' history of seizures as upon arrival at the jail facility, Mr. Wiggins informed the jail facility's medical personnel and Defendants DOES 1-5, on several occasions, that he had a history of seizures, and that if he was assigned to a top bunk bed, he could fall and suffer injuries. Although Mr. Wiggins repeatedly requested to be assigned to a bottom bunk bed, his requests were ignored. Notwithstanding the knowledge that Mr. Wiggins' condition warranted his placement on a bottom  bunk bed, Defendants DOES 1-5 assigned Mr. Wiggins to a top bunk, where he could easily, and in fact did, suffer serious injuries from a seizure related fall.

4.     Mr. Wiggins brings this action for damages against the Defendants for Defendants' violations of his civil rights, including Deliberate Indifference to Serious Medical Condition in Violation of Eighth Amendment of the United States Constitution (42 U.S.C. § 1983), Municipal Liability for Unconstitutional Custom or Practice (42 U.S.C. § 1983), Violation of the Bane Civil Rights Act (Cal. Civ. Code § 52.1), Intentional Infliction of Emotional Distress, Negligence, and Negligent Hiring, Supervision, Retention and Training.

5.     Defendants DOES 1-5 are directly liable for Plaintiff's injuries under federal law pursuant to 42 U.S.C. § 1983 and under state law pursuant to California Government Code § 820.

6.     Defendants DOES 6-10 proximately caused Plaintiff's injuries by integrally participating or failing to intervene in the constitutional violations that resulted in Plaintiff's injuries. Defendants DOES 6-10 are directly liable for Plaintiff's injuries under federal law pursuant to 42 U.S.C. § 1983.

7.     Defendants COUNTY, SHERIFF BIANCO, and DOES 6-10 also approximately caused Plaintiff's injuries and are liable under state law pursuant to California Government Code §§ 815.2 and 820 and under principles set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978) and by ratifying the

3

**PLAINTIFF COMPLAINT FOR DAMAGES**

*Wiggins v. County of Riverside, et al.*                                V. James DeSimone, Esq.
Case No.:  5:24-cv-02405                                                Carmen D. Sabater, Esq.

1  unconstitutional actions of DOES 1-5 and/or maintaining a policy or custom that is
2  the "moving force" behind the unconstitutional deprivations alleged below.

3      8.      The policies and customs of deliberate indifference to inmates'
4  medical condition, including Plaintiff's, failure to provide timely medical care,
5  mismanagement of medications, and subjecting inmates, such as Plaintiff, to cruel
6  and unusual punishment while in the custody and care of Riverside County Seriff's
7  Department are fundamentally unconstitutional.

8                      **PARTIES AND THEIR AGENTS**

9      9.      Plaintiff, Mr. Wiggins, is and was, at all times relevant to this action,
10  a resident of the County of Riverside, State of California.

11      10.     Defendant **COUNTY** is a public entity, duly organized and existing
12  under the laws of the State of California. Under its authority, Defendant COUNTY
13  operates and manages  Larry D Smith Correctional Facility Banning and Riverside
14  County Sherriff's Department and is and was at all relevant times mentioned herein
15  responsible for the actions and/or inactions and the policies, procedures, and
16  practices/customs of the Riverside County Sheriff's Department and Larry D Smith
17  Correctional Facility Banning, and each entity's respective employees and/or
18  agents.  Riverside  County  Sheriff's  Department  operates  Larry  D  Smith
19  Correctional Facility Banning and is and was responsible for ensuring the provision
20  of medical and housing accommodations for inmates.

21      11.     Defendant **CHAD BIANCO** is, and was at all relevant times
22  mentioned herein, the Sheriff of the County of Riverside, the highest position in the
23  Riverside County Sheriff's Department. As Sheriff, Defendant BIANCO is and was
24  responsible for the hiring, screening, training, retention, supervision, discipline,
25  counseling, and control of all Riverside County Sheriff's Department custodial
26  employees and/or agents and DOES 1 through 10. Defendant BIANCO is and was
27  charged by law with the administration of the Riverside County Jail. As a matter of
28  law, Defendant BIANCO is answerable for the safekeeping of the inmates in all

4

Riverside County Jails, including Larry D Smith Correctional Facility Banning, and is further responsible for matters relating to the selection, supervision, promotion, training and discipline of the Riverside County jails, including DOES 1-10 discussed herein who interpret and apply the jails' inmate housing policy. Defendant BIANCO also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the Riverside County Sheriff's Department alleged herein were committed. While others may occasionally assist Defendant BIANCO with his responsibilities, a Sheriff cannot delegate or abduct his ultimate supervisory duty to take charge of and be the sole exclusive authority for ensuring the well-being of the jail and detainees within. Defendant BIANCO is being sued in his individual capacity.

12.    Defendants **DOES 1-5** (DOES 1-5), on information and belief, are and were, at all times relevant to this action, individuals living in the County of Riverside, State of California. Plaintiff is informed and believes, and thereon alleges, that at all relevant times, DOES 1-5 were duly authorized peace and/or correctional officers/deputies, medical personnel, agents, servants, and employees of Defendant COUNTY and/or Riverside County Sheriffs' Department and were acting within the course and scope of their respective duties as correctional officers and with complete authority and ratification of their principal Defendant COUNTY. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1-5, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. As such, the individual DOE Defendants are sued in both their individual and official capacities.

13.    Defendants **Supervisor DOES 6–10** ("DOES 6-10" or "SUPERVISOR DOES"), on information and belief, are and were, at all times relevant to this action, individuals living in the County of Riverside, State of California. At all relevant times, DOES 6-10 were duly authorized peace and/or

**PLAINTIFF COMPLAINT FOR DAMAGES**

*Wiggins v. County of Riverside, et al.*                              V. James DeSimone, Esq.
Case No.:  5:24-cv-02405                                              Carmen D. Sabater, Esq.

correctional officers, supervisors of peace and/or correctional officers, agents, servants, and employees of Defendant COUNTY and/or the Riverside County Sheriffs' Department (RCSD) and were acting within the course and scope of their respective duties as supervisors of peace and/or correctional officers and with complete authority and ratification of their principal Defendant COUNTY. Plaintiff is ignorant of the true names of DOES 6-10, and therefore sue them by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of DOES 6-10 when the same have been ascertained. Each of the fictitious named DOES 6-10 are responsible in some manner for the conduct and liabilities alleged herein.

14.    Plaintiff is informed and believes, and thereupon alleges, that at all times mentioned in this Complaint, Defendants were the agents, employees, servants, joint venturers, partners and/or co-conspirators of the other Defendants named in this Complaint and that at all times, each of the Defendants was acting within the course and scope of said relationship with Defendants.

15.    All Defendants who are natural persons, including DOES 1-10, are sued individually and/or in his/her official capacity as officers, sergeants, captains, commanders, supervisors, and/or civilian employees, agents, policy makers, and representatives for the COUNTY.

16.    Defendants are liable for Plaintiff's injuries under California law and under the doctrine of *responde at superior*.  Liability under California law for public entities and public employees is based upon California Government Code §§ 815.2 and 820 and under principles set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978) and by ratifying the  unconstitutional actions of the Unknown DOE Defendants and/or maintaining a policy or custom that is the "moving force" behind the unconstitutional deprivations alleged below.

17.    At all times mentioned herein, each and every Defendant was the agent of each and every other Defendant and had the legal duty to oversee and supervise

6

the hiring, conduct and employment of each and every DEFENDANT herein.

18.    Plaintiff timely filed a government tort claim pursuant to California Civil Code § 910 with Defendant County of Riverside on June 4, 2024. On June 6, 2024, Defendant County of Riverside rejected Plaintiff's tort claim. Accordingly, Plaintiff has complied with the requirements of the California Government Claims Act.

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. § 1331 (federal question). This Court has jurisdiction to issue declaratory or injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

20.    Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391, as all DEFENDANTS and the events giving rise to the claims herein occurred in the Central District of California.

## FACTUAL ALLEGATIONS

### History of Inadequate Medical Care, Supervision, and Care in Jails Operated by the Riverside County Sheriff's Department

21.    The Riverside County Sheriff's Department has a policy and practice of deliberate indifference to inmates' serious medical conditions, failing to provide adequate medical care to inmates in their care, neglecting to maintain complete and accurate inmate records, condoning retaliation against inmates in jails, routinely failing to provide information on deputy misconduct to inmates who request it, obstructing misconduct investigations and falsifying reports to avoid accountability, failing to provide timely care and to administer appropriate medications, and deliberate indifference to  the fact that their failure to do so subjects inmates to substantial risk of unnecessary suffering, serious injury and death.

///

7

**PLAINTIFF COMPLAINT FOR DAMAGES**

*Wiggins v. County of Riverside, et al.*                     V. James DeSimone, Esq.
Case No.:  5:24-cv-02405                                     Carmen D. Sabater, Esq.

22.     The severe deficiencies in health care services in Riverside County's jails are well established by admissions from its Sheriffs and reports from state and county watchdogs and independent auditors. Defendant COUNTY has long been aware of the harm its deficient system causes to inmates with serious health care needs through these reports as well as numerous grievances and health needs requests from prisoners. Defendant's failure to take action to ameliorate the conditions constitutes deliberate indifference to inmates, including Plaintiff's serious health care needs.

23.     Several 2011 reports documented extensive health care violations in the jails. The 2010-11 Grand Jury Report: Riverside County Detention Health Care Administration found systemic failures in treatment, medication management, record-keeping, and administration of forced medications, among other areas.[1] On July 5, 2011, the Riverside County Sheriff's Department responded that it "generally concurs with the findings of the Grand Jury and has been outspoken on the need to remedy these issues over the last two years."[2]

24.     Riverside County Sheriff's Department invited the state's Corrections Standards Authority (CSA), a body with statutory duty to regularly inspect COUNTY's facilities, to perform an additional inspection in January 2011. The CSA found numerous violations of state law, including a widespread failure to provide daily sick call and insufficient oversight of prisoners on suicide watch. They also found serious deficits in medication administration: missed pill calls, night-time medications administered between 4 and 6 p.m., and prisoners going to court denied medications entirely.

25.     At the CSA's recommendation, the Riverside County Sheriff's Department contracted with the independent Inmate Medical Quality (IMQ) to identify deficits and make recommendations. IMQ performed their evaluation May

---

[1] **2002-2003 GRAND JURY REPORT (rivco.org)**
[2] **11resp_rivcosheriff_mentalhealth_detentionserv.pdf**

**PLAINTIFF COMPLAINT FOR DAMAGES**

*Wiggins v. County of Riverside, et al.*                    V. James DeSimone, Esq.
Case No.:  5:24-cv-02405                                          Carmen D. Sabater, Esq.

2-5, 2011, and reported significant and potentially harmful systemic deficiencies in staffing, screening, sick call, quality assurance, medical records, management of communicable diseases, medication management, and use of restraints and safety cells for suicidal or self-harming prisoners. As with both of the Grand Jury reports, the department accepted these findings as requiring immediate and drastic attention.

26.    The health care deficiencies in the Riverside jails, and Defendant COUNTY's awareness of them, predate the 2011 reports and stem in part from years of drastic cost-cutting measures. The County made deep cuts to medical personnel staffing levels in fiscal year 2008-09, which unacceptably impacted the delivery of medical services. . . and other jail operations. Instead of correcting the problem, the County made another 20% reduction in medical and mental health care staff as of July 1, 2010.

27.    Since 2014, the County of Riverside Civilian Grand Jury has investigated and published eight reports concerning the conduct, operations and mismanagement of the Riverside Sheriff's Department.[3] These reports have recommended various reasonable changes, including that Corrections wash laundry twice a week, back up video recordings inside the jail, revise their visitation spaces/policies and go beyond minimum standards established by the Board of State and Community Corrections (BSCC). In response, both Sheriff Sniff (2007-2018) and Defendant SHERIFF BIANCO (2018- present) almost always refused to implement the changes proposed by the Grand Jury.[4] Riverside County Sheriff's Department not only ignored recommendations from the County's oversight

---

[3] Civil Grand Jury Reports and Responses
https://www.rivco.org/about-county/executive-office/reports-and-responses

[4] For example, the 2017-2018 Grand Jury Report "Riverside County Sherif 's Department Corrections Division Correctional Centers Inmate Services Issues" found a set of five recommendations for Riverside County Sherif 's Department (RSD). In the response RSD only agreed to one allegation to ensure there exists a backup of in -custody video recordings. This trend however is common amongst Grand Jury Reports where the systemic problems usually are denied by RSD and only agreeing to miniscule changes as outlined above.

9

agency, but it also refused to improve jail conditions even when mandated by a federal court.

28.    In 2015, Riverside County entered into a consent decree in a federal lawsuit brought by the Prison Law Office on behalf of individuals incarcerated in the County's jails.[5] The court found that the County failed to provide minimally adequate medical and mental health care to incarcerated people, in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution and the Americans with Disabilities and Rehabilitation Acts. The consent decree ordered the County to implement a remedial plan designed to raise the level of care in its jails to the constitutional minimum.[6]

29.    In April of 2020, COVID-19 hit the Riverside County jail system, leading to one of the largest jail outbreaks in California.[7] In addition to the county jails' reputation for inhumane medical care, the jails were extremely crowded, leading incarcerated people to fear for their lives.[8,9,10] Seeing that Riverside County Sheriff's Department (RDS) did not have a plan to protect incarcerated people from the virus, the Prison Law Office filed an emergency motion in federal court to

---

[5] Grey v. Riverside, 2016, Case No. EDCV12-0444 VAP **https://prisonlaw.com/wp-content/uploads/2020/01/Gray-v-County-of-Riverside-Consent-Decree.pdf**

[6] Grey v. Riverside, 2016, Case No. EDCV12-0444 VAP

[7] Alene Tchekmedyian (April 23rd, 20202), Fateful choices as coronavirus raged through Riverside jail, hitting deputies and inmates. Los Angeles Times **https://www.latimes.com/california/story/2020-04-27/riverside-county-jails-coronavirus-outbreak**

[8] Christopher Damien (April 6th, 2020) Coronavirus stokes fear in crowded Riverside County jails. The Desert Sun **https://www.desertsun.com/story/news/crime_courts/2020/04/06/coronavirus-stokesfearcrowded-riverside-county-j ails/5114175002/**

[9] Christopher Damien (April 10th, 2020) Coronavirus: Judge asked to make Riverside County Sherif 's Dept. share plan to curb virus in jails. The Desert Sun **https://www.desertsun.com/story/news/crime_courts/2020/04/10/coronavirus-judge-asked-make-sheriffs-department -share-its-plan-protect-inmates/2973669001/**

[10] Mike Ludwig (May 29, 2020) California Sherif Refuses to Release People From Jail as COVID Outbreak Rages. Truth Out Magazine **https://truthout.org/articles/california-sheriff-refuses-to-release-people-from-jail-as-covid-outbreak-rages/**

---

**PLAINTIFF COMPLAINT FOR DAMAGES**

*Wiggins v. County of Riverside, et al.*                                     V. James DeSimone, Esq.
Case No.:  5:24-cv-02405                                                      Carmen D. Sabater, Esq.

protect its class members from the novel coronavirus. The court granted the motion, requiring RSD to develop a plan to safely house and care for all incarcerated individuals who are at high risk for complications from COVID-19, to provide adequate hygiene and cleaning supplies, and to address the mental health needs of people in medical quarantine.[11] While RSD did develop a plan to prevent the spread of COVID-19,[12] people incarcerated in Riverside County jails experienced inhumane conditions, including, but not limited to, the denial of soap, cleaning supplies, masks, clean clothes, phone access, regular showers, COVID-tests, and life-saving medications and medical care.

30.    On September 16, 2021, the ACLU Foundation of Southern California ("ACLU") wrote a letter to the Office of the Attorney General and requested an investigation into the Riverside County Sheriff's Department for its rampant deputy violence, persistently inhumane jail conditions, and refusal to protect people in county custody from COVID-19.[13] In its letter, ACLU reiterated that for years, County of Riverside Sheriff's Department has demonstrated a pattern of racist policing practices, rampant patrol and jail deaths, and a refusal to comply with recommendations from oversight agencies and a court-mandated consent decree. ACLU also provided testimonies from individuals held in Riverside County custody and their loved ones about available mental and medical health care in the County's jails. Their stories demonstrate that the consent decree has been violated multiple times by the RSD since its filing in 2015.[14]

31.    Amid concerning levels of in-custody deaths and allegations of misconduct by the Riverside County Sheriff's Department, on or around February

---

[11] Grey v. Riverside, 4/16/2020, Case No. EDCV12-0444 VAP **https://prisonlaw.com/wp-content/uploads/2020/04/20.04.15-Doc-193-Order-Granting-Plaintiffs-Motion.pdf**

[12] Grey v. Riverside, 7/20/2020, Case No. EDCV12-0444 VAP **https://prisonlaw.com/wp-content/uploads/2020/07/20.07.20-No.-201-1-Proposed-order-on-COVID-19-plan-with-Exhibit-A.pdf**

[13] **Letter to AG Bonta - Investigation of RSD (aclusocal.org)**

[14] **ACLU SoCal NextCloud (acluwest.org)**

11

**PLAINTIFF COMPLAINT FOR DAMAGES**

*Wiggins v. County of Riverside, et al.*                                    V. James DeSimone, Esq.
Case No.: 5:24-cv-02405                                              Carmen D. Sabater, Esq.

23, 2023, California Attorney General Rob Bonta opened a civil rights investigation into Riverside County Sheriff's Department.[15] The investigation sought to determine whether Riverside County Sheriff's Office (RCSO) had engaged in a pattern or practice of unconstitutional policing amid deeply concerning allegations relating to conditions of confinement in its jail facilities, excessive force, and other misconduct. "All Californians deserve fairness and respect from the institutions that serve them," said Attorney General Bonta. In response to the allegations, Riverside County Sheriff Chad Bianco released a video statement[16] Bianco called the patterns-and-practices probe a "political stunt" out of Sacramento. "This investigation is based on nothing but false and misleading statements and straight-out lies from activists, including their attorneys," Bianco said. On information and belief, the investigation is currently pending.

32.    Against the backdrop of a civil rights investigation by Attorney General Rob Bonta into Riverside County Sheriff, Chad Bianco and his department, more than a half-dozen lawsuits were filed in U.S. District Court in Riverside against Riverside County Sheriff's department in 2023. The lawsuits came after 18 inmates died in Riverside County jails in 2022, the most in one year since 12 inmates died in the county jail system back in 2005.[17] According to the lawsuits, the defendants "deliberately failed to take even modest actions to prevent in custody deaths at the Riverside County correctional facilities." The lawsuits alleged several federal charges against the county, including failure to protect from harm, failure to provide medical care, supervisory liability causing constitutional violations and negligence.

///

---

[15] **Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office | State of California - Department of Justice - Office of the Attorney General**
[16] **Sheriff Bianco's Response to Frivolous Civil Rights Investigation by DOJ. (youtube.com)**
[17] **Civil rights lawsuit filed against Riverside County, Sheriff Chad Bianco after record number of deaths in jails - ABC7 Los Angeles**

**PLAINTIFF COMPLAINT FOR DAMAGES**

*Wiggins v. County of Riverside, et al.*                                    V. James DeSimone, Esq.
Case No.:  5:24-cv-02405                                              Carmen D. Sabater, Esq.

33.     In January of 2024, another lawsuit was filed against the Riverside County Sheriff's Department following the suicide of 21-year-old inmate Alicia Upton, who was residing in one of the county jails at the time. The lawsuit alleged inadequate medical safety and the department's pattern of negligence with regards to inmate care. In response to being sued, Defendant SHERIFF CHAD BIANCO released a variety of statements claiming the suit "is nothing more than someone wanting money" and saying the county is "responsible for a suicide is silly."

## FACTS COMMON TO ALL CAUSES OF ACTION

34.     On or around December 19, 2023, Mr. Wiggins was taken to Larry D Smith Correctional Facility Banning by Riverside County Sheriff's Department. Upon arrival at the Larry D Smith Correctional Facility Banning, and multiple times thereafter, Mr. Wiggins informed the facility's medical personnel, correctional deputies, and unknown DOES 1-5, on several occasions, that he had a history of seizures, and that if he was assigned to a top bunk bed, he could fall and suffer injuries.

35.     Although Mr. Wiggins repeatedly requested to be assigned to a bottom bunk bed, and his condition warranted his placement on a bottom bunk, unknown DOES 1-5 assigned Mr. Wiggins to a top bunk, where he could easily, and in fact did, suffer serious injuries from a seizure related fall.

36.     Prior to being booked at Larry D Smith Correctional Facility Banning, Mr. Wiggins had his seizure and blood pressure medications with him. As part of the booking process, Mr. Wiggins' belongings, including said medications, were taken away from him.

37.     After the completion of his booking and as Mr. Wiggins and DOES 1-5 were walking towards the cells, Mr. Wiggins informed DOES 1-5 that he could not be assigned to a top bunk bed due to his medical condition, including history of seizures and high blood pressure. DOES 1-5 did not respond to Mr. Wiggins and ignored his request. DOES 1-5 then took Mr. Wiggins to a cell where there was

another individual who had already been assigned the bottom bunk bed. Mr. Wiggins once again informed DOES 1-5 that he could not sleep on the top bunk due to his history of seizures and asked DOES 1-5 to assign him to a cell where he could sleep on the bottom bunk. Mr. Wiggins even pointed at a nearby cell where there was only one bed and asked DOES 1-5 to let him stay in that cell where he did not have to sleep on a top bunk bed.

38.     DOES 1-5 ignored Mr. Wigging request and left Mr. Wiggins in a cell where he had to sleep on the top bunk bed. Based on information and belief, at the time of the subject incident, the bunk beds in Larry D Smith Correctional Facility Banning did not have any railings and/or guards which could prevent Mr. Wiggins, who was 256 pounds at the time, from rolling off the bed. Additionally, the top bunk bed to which Mr. Wiggins was assigned did not have a mattress. The other individual who was assigned the bottom bunk bed called DOES 1-5 and asked for a mattress for Mr. Wiggins. Mr. Wiggins once again asked DOES 1-5 to take him to another cell where he could sleep on the bottom bunk bed and informed them of his seizures and high blood pressure conditions. Mr. Wiggins also informed DOES 1-5 that he was feeling dizzy. All of Mr. Wiggins pleas were ignored.

39.     The next day, Mr. Wiggins once again informed unknown DOES 1-5 of his high blood pressure and seizure condition and that he needed his seizure and blood pressure medications. Mr. Wiggins was taken to the medical office. Mr. Wiggins informed the jail medical personnel of his history of seizure and high blood pressure condition and that he needed to have his seizures and blood pressure medications with him at all times. The medical personnel checked Mr. Wiggins' blood pressure and said, "but you are fine now." Mr. Wiggins informed the medical personnel that he gets headaches and feels dizzy throughout the day and while in his cell and he needed to always have his medications with him. Mr. Wiggins further informed the medical personnel that he had not had his seizure and blood pressure medications in the last 24 hours as his mediations had been taken away from him at

**PLAINTIFF COMPLAINT FOR DAMAGES**

*Wiggins v. County of Riverside, et al.*                                    V. James DeSimone, Esq.
Case No.: 5:24-cv-02405                                                     Carmen D. Sabater, Esq.

1    the time of his booking.

2        40.    The next day, at around nighttime, DOES 1-5 finally provided Mr.

3    Wiggins with seizures and blood pressure medications. After being prescribed with

4    the seizure medication, however, the unknown DOES 1-5 intentionally or recklessly

5    did not give Mr. Wiggins the correct medication dosage at the proper times, even

6    though Mr. Wiggins informed said deputies that he had been taking his seizure

7    medication for the last 20 years and that he was supposed to take two pills in the

8    morning and two pills at night. The unknown DOES 1-5, however, ignored Mr.

9    Wiggins' requests, did not give him the pills in the morning and continued to give

10    him six pills at night. At this point, Mr. Wiggins was afraid for his life as he was

11    not being given the correct dosage of his medication, which could have serious

12    effect on his health and life.

13        41.    Additionally, while in his cell, Mr. Wiggins was scared to sleep at

14    nights because he was afraid of having a seizure while asleep and falling from his

15    assigned top bunk bed.

16        42.    The fourth night (December 22, 2023) Mr. Wiggins was in the jail,

17    while sleeping in his cell, he displayed "seizure like" activity, and fell from his

18    assigned top bunk. When Mr. Wiggins fell from the top bunk, his head slammed

19    into the concrete floor of the cell, causing a skull fracture and profuse bleeding from

20    the head injury. Immediately following the fall, Mr. Wiggins tried to move his head,

21    back, and neck but was unable to do so. Mr. Wiggins was struggling to breath, was

22    in intense pain, in shock and disoriented. Mr. Wiggins' cell mate called deputies

23    DOES 1-5, informed them of Mr. Wiggins' injuries and asked for help.

24        43.    Despite the severity of Mr. Wiggins' injuries, deputies DOES 1-5 did

25    not promptly summon medical assistance or call an ambulance. Based on

26    information and belief, it took DOES 1-5 ten minutes to come to Mr. Wiggins' aid,

27    despite the severity of his injuries and pleas for medical attention. When DOES 1-

28    5 arrived at the cell, they asked whether Mr. Wiggins and his cell mate had a fight,

**PLAINTIFF COMPLAINT FOR DAMAGES**
*Wiggins v. County of Riverside, et al.*    V. James DeSimone, Esq.
Case No.: 5:24-cv-02405    Carmen D. Sabater, Esq.

1    to which they both responded no and explained that Mr. Wiggins fell from his

2    assigned top bunk due to having a seizure in his sleep.

3          44.     Mr. Wiggins, falling in and out of consciousness, informed deputies

4    DOES 1-5 that he could not feel his head, back, and neck, and that he could not

5    breath. Mr. Wiggins felt he was paralyzed. Mr. Wiggins' hands were numb. Mr.

6    Wiggins felt helpless and very scared. DOES 1-5 then yanked Mr. Wiggins on his

7    stomach, which caused Mr. Wiggins to scream in pain, while begging them to call

8    911. Mr. Wiggins' entire body was hot, and he had chest pain. DOES 1-5 then asked

9    Mr. Wiggins if he wanted to go to the hospital. In shock and while crying due to his

10   severe injuries and pain, Mr. Wiggins begged DOES 1-5 to call an ambulance.

11        45.     Eventually, Mr. Wiggins was taken to Riverside University Health

12   System Hospital by an ambulance. Due to severity of Mr. Wiggins' injuries, he had

13   to stay in the hospital from approximately December 22, 2023, to December 29,

14   2023. The doctors conducted a Ct-Scan and MRI of Mr. Wiggins' head and spine

15   and diagnosed him with head trauma, laceration, ICH, skull fracture, severe C4-C5

16   and moderate C5-C6 spinal canal stenosis, and right forehead abrasion. The doctors

17   also found that due to the fall, there was a C4-C6 disc height loss, and there was a

18   fracture involving the anterior superior corner of the C6 vertebral body/anterior

19   osteophyte with associated tear of the anterior longitudinal ligament. In addition to

20   the other injuries, Mr. Wiggins' MRI indicated a traumatic brain injury and brain

21   damage.

22        46.     DOES 1-5 kept Mr. Wiggins in handcuffs the entire time Mr. Wiggins

23   was in the hospital bed.

24        47.     Mr. Wiggins was prescribed various medications for his injuries and

25   was referred to a Neurologist for cervical fracture and seizures, to Physical Therapy

26   for cervical pain and balance problems, to sleep study for sleep apnea, and was

27   instructed to follow up with general surgery, vascular surgery, and neurosurgery.

28   ///

**PLAINTIFF COMPLAINT FOR DAMAGES**

*Wiggins v. County of Riverside, et al.*               V. James DeSimone, Esq.
Case No.: 5:24-cv-02405                      Carmen D. Sabater, Esq.

48.     After Mr. Wiggins was released from Riverside University Health System Hospital on December 29, 2023, he was admitted to Ballard Rehab Hospital to receive physical therapy and continue treatment for his injuries. Mr. Wiggins' neck and shoulder were in excruciating pain, his mobility was limited, he had to use a walker for walking and a chair for taking shower. Mr. Wiggins was discharged from Ballard Rehab Hospital on January 10, 2024. Mr. Wiggins had to stay in the hospital and away from his family during the entire Holiday season.

49.     Mr. Wiggins is in the process of receiving treatment for the movement of the veins in his neck due to the fall. Mr. Wiggins was also informed by his doctors that he might need back and/or neck surgery in the future. Mr. Wiggins' mobility and daily activities have been impacted because of the injuries to his neck and shoulder. Mr. Wiggins is still receiving outpatient rehabilitation treatments. Mr. Wiggins still currently feels numbness in his right hand and left shoulder. Mr. Wiggins' neck, shoulders and hands are still very weak. Mr. Wiggins' hands become very tired and sometimes numb after holding his objects in his hand like a mobile phone for a few minutes. Mr. Wiggins still needs a walker to assist him in walking and uses a chair while taking showers to prevent him from falling.

50.     As a result of the incident, Mr. Wiggins suffered serious injuries, including but not limited to, head trauma, laceration, skull fracture, neck fracture, possible cervical fracture, muscle spasm, hands numbness, brain injury, and balance problem.

51.     Prior to the incident, Mr. Wiggins was doing house chores, taking care of his children, driving them to school, playing football with family and friends, and was actively engaging in daily activities. Now, however, due to his severe injuries, Mr. Wiggins is unable to drive his children to school, both because of the limitations on his mobility and because he takes multiple medications for his pain which make him drowsy and sleepy. Mr. Wiggins cannot play football anymore due to his injuries and cannot engage in activities that require driving, walking for more than

PLAINTIFF COMPLAINT FOR DAMAGES

*Wiggins v. County of Riverside, et al.*                                    V. James DeSimone, Esq.
Case No.:  5:24-cv-02405                                                     Carmen D. Sabater, Esq.

a short period of time, exercising, and moving around.

52.    Mr. Wiggins has also been experiencing depression and anxiety since the incident. Mr. Wiggins used to be active, go out to dinner, shopping and going to friends and family gatherings before the incident. Now, however, Mr. Wiggins does not do the same activities anymore as he is scared of falling due to the weakness in his body, he needs his wife to drive him to places, he takes multiple muscle relaxers and other medications, which make him drowsy and tired, and has difficulty with moving around. Mr. Wiggins lays in his bed or a couch most of the time during the day and cannot engage in the same activities with his children and wife as before. All of this has significantly affected Mr. Wiggins' depression, anxiety and mental health.

53.    Mr. Wiggins has also suffered economic loss. For the last 10 years prior to the incident, Mr. Wiggins' job was operating forklifts, which is a job that requires strength in hands, shoulders, neck, back, and also requires climbing, having a proper balance, pushing, pulling, lifting and carrying. Mr. Wiggins was not employed immediately prior to the incident but he was in a temporary agency waiting to be assigned work. Due to his severe injuries from the fall, Mr. Wiggins is now unable to secure employment as a forklift operator or any other employment.

///

///

///

**PLAINTIFF COMPLAINT FOR DAMAGES**

# FIRST CAUSE OF ACTION

## Deliberate Indifference to Serious Medical Condition in Violation of the Fourteenth Amendment to the U.S. Constitution (42 U.S.C. § 1983)

### (Against All Defendants)

54.     Plaintiff repeats and re-alleges each and every allegation in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

55.     Defendants DOES 1-10 acted under color of state law within the course and scope of their duties to secure and manage Riverside County Sheriff's facilities when they and/or their agents placed Plaintiff on the top bunk despite his documented history of seizures.

56.     Plaintiff had a right under the Fourteenth Amendment to the United States Constitution to be free from "cruel and unusual punishments," including but not limited to: (i) the right to be free from correction official's deliberate indifference to his serious medical needs, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), and (ii) the right to be free from conditions of confinement that that are sure or very likely to cause serious harm or death. *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993), s*ee also Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018).

57.     Defendants DOES 1-10 had actual and/or constructive knowledge of Plaintiff's history of seizures at the time he was in custody of Riverside County Sheriff's Department (RCSD) as upon his arrival at Larry D Smith Correctional Facility Banning, and multiple times thereafter, Plaintiff informed Defendants DOES 1-10, including the facility's medical personnel and correctional officers that he had a history of seizures and that if he was assigned to a top bunk bed, he could fall and suffer injuries.

///

///

**PLAINTIFF COMPLAINT FOR DAMAGES**

*Wiggins v. County of Riverside, et al.*                    V. James DeSimone, Esq.
Case No.:  5:24-cv-02405                                    Carmen D. Sabater, Esq.

58.    Defendant CHAD BIANCO knew or should have known that his subordinates' failure to assign Plaintiff to a bottom bunk would amount to a constitutional violation where he was put on notice that errors in housing had resulted in death or serious bodily harm to inmates in jails under his control through multiple reports and lawsuits where he was a defendant.

59.    Defendants had constructive and/or actual knowledge that Plaintiff's medical condition was serious and was one that reasonably and foreseeably could result in severe bodily harm and/or death. Further, Defendants had actual and/or constructive knowledge that when individuals experience seizures, they often lose control over bodily movements.

60.    Notwithstanding knowledge that Plaintiff's medical condition warranted his placement on a bottom bunk, the Defendants assigned Mr. Wiggins to a top bunk, where he could easily, and in fact did, suffer serious injuries from a seizure related fall.

61.    Additionally, once assigned to a cell at Larry D Smith Correctional Facility Banning, Plaintiff informed unknown Defendants DOES 1-5 of his high blood pressure condition, that he had a history of seizure, and that he needed his seizure medications. After being prescribed with the seizure medication, however, unknown Defendants DOES 1-5 intentionally did not give Plaintiff the correct medication dosage at the proper times, even though Plaintiff informed unknown Defendants DOES 1-5 that he had been taking his seizure medication for the last 20 years and that he was supposed to take three pills in the morning and three pills at night. Unknown Defendants DOES 1-5, however, ignored Plaintiff's requests, did not give him the pills in the morning and continued to give him six pills at night.

62.    Defendants' above-mentioned conduct thereby constitutes deliberate indifference to Plaintiff's serious medical condition and/or deliberate indifference to conditions of confinement that were sure or very likely to cause death and/or great bodily harm.

**PLAINTIFF COMPLAINT FOR DAMAGES**

*Wiggins v. County of Riverside, et al.*                           V. James DeSimone, Esq.
Case No.:  5:24-cv-02405                                         Carmen D. Sabater, Esq.

63.    Defendants' deliberate indifference to Plaintiff's serious medical needs and deliberate indifference to conditions of confinement likely to cause him serious harm, were substantial factors causing Plaintiff serious harm. By failing to act, SHERIFF BIANCO acquiesced, condoned, or ratified a custom, practice, or policy of ongoing constitutional violations by his subordinates.

64.    By Defendants' policies and practices of ongoing constitutional violations, Defendants subjected inmates in County of Riverside's jails, including Plaintiff, to an unreasonable risk of harm and injury from inadequate health care and deliberate indifference to their serious medical condition. These policies and practices have been and continue to be implemented by Defendants and their agents and/or employees in their official capacities, and are the proximate cause of their inmates, including Plaintiff's deprivation of rights secured by the United States Constitution under the Eight Amendment.

65.    The actions of Defendants were willful, wanton, oppressive, malicious, and unconscionable to a person of normal sensibilities, and therefore warrant the imposition of exemplary and punitive damages as to individual Defendants.

66.    Plaintiff seeks all available damages under this claim, including reasonable attorney's fees.

///

///

///

21

**PLAINTIFF COMPLAINT FOR DAMAGES**

## **SECOND CAUSE OF ACTION**

### **Municipal Liability for Unconstitutional Custom or Practice**

### **(42 U.S.C. §1983)**

### **(Against Defendant COUNTY)**

67.    Plaintiff repeats and re-alleges each and every allegation in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

68.    Based upon the principles set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), Defendant COUNTY is liable for all injuries sustained by Plaintiff as set forth herein.

69.    Defendant COUNTY bears liability because its policies, practices and/or customs were a cause of Plaintiff's injuries. Defendant COUNTY and its officials, including Defendant BIANCO, maintained or permitted one or more of the following official policies or customs:

  a. Deliberate indifference to inmates' serious medical condition by failing to provide proper housing;

  b. Deliberate indifference to inmates' serious medical needs by failing to provide timely medical care;

  c. Deliberate indifference to inmates' serious medical needs by failing to keep proper medical records;

  d. Failure to provide adequate training and supervision to correctional officers with respect to constitutional limits on failure to provide adequate medical care and/or proper housing;

  e. Employing and retaining as correctional officers and other personnel, including Defendants Unknown DOES 1-5, whom Defendants COUNTY and BIANCO, and DOES 6-10 at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for

22

**PLAINTIFF COMPLAINT FOR DAMAGES**

*Wiggins v. County of Riverside, et al.*     V. James DeSimone, Esq.
Case No.: 5:24-cv-02405       Carmen D. Sabater, Esq.

mistreating inmates by failing to follow written Riverside County Sheriff's Department policies, including providing proper housing and adequate medical care to inmates;

f.    Of inadequately supervising, training, controlling, assigning, and disciplining COUNTY correctional officers and other personnel, including Defendants unknown DOES 1-5, whom Defendants CHAD BIANCO, COUNTY and DOES 6-10 knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits, including the propensity for violating inmates' constitutional rights, including failure to provide adequate medical care and ensure inmates' safety;

g.    By maintaining grossly inadequate procedures for reporting, supervising, investigating reviewing, disciplining and controlling the intentional misconduct by Unknown Defendants DOES 1-10, who are correctional officers, other personnel, and/or agents of COUNTY;

h.    By failing to meaningfully investigate and adequately discipline Defendants unknown DOES 1-10 and/or other COUNTY personnel, including but not limited to, failure to provide proper housing and adequate medical care to inmates;

i.    Obstructing misconduct investigations and falsifying reports to avoid accountability;

j.    By having and maintaining an unconstitutional policy, custom, and practice of failure to provide adequate medical care to inmates and safe housing environment, which also is demonstrated by inadequate training regarding these subjects. The policies, customs, and practices of Defendants

23

PLAINTIFF COMPLAINT FOR DAMAGES

*Wiggins v. County of Riverside, et al.*                                    V. James DeSimone, Esq.
Case No.:  5:24-cv-02405                                                      Carmen D. Sabater, Esq.

1    CHAD BIANCO, COUNTY and DOES 1-10 were maintained
2    with a deliberate indifference to individuals' safety and rights;

3    k.    Condonation and encouragement of the officers in the belief that
4    they can violate the rights of persons such as Plaintiff with
5    impunity, and that such conduct will not adversely affect their
6    opportunities for promotion and other employment benefits,
7    and;

8    l.    Ratification by the highest levels of authority of the specific
9    unconstitutional acts alleged in this complaint and, in particular,
10   the ratification of failure to provide adequate medical care to
11   Plaintiff and his injuries.

12   70.    Defendants COUNTY, CHAD BIANCO, County of Riverside
13   Sheriffs' Department and DOES 1–10, together with other officials whether named
14   or unnamed, had constructive and actual knowledge of the deficient policies,
15   practices, and customs alleged in the above paragraphs. Despite having this
16   knowledge, defendants condoned, tolerated, and through actions and inactions
17   thereby ratified such customs and practices. These defendants acted with deliberate
18   indifference to the foreseeable effects and consequences of these customs and
19   practices with respect to the constitutional rights of Plaintiff.

20   71.    By perpetrating, sanctioning, and tolerating the outrageous conduct
21   and wrongful acts, Defendants acted with intentional, reckless, and callous
22   disregard for the health and safety of Plaintiff and his constitutional rights.
23   Furthermore, these customs and practices were affirmatively linked to and were a
24   significantly causal force behind Plaintiff's injuries.

25   72.    Plaintiff seeks all available damages under this claim, including
26   reasonable attorneys' fees.

27   ///
28   ///

24

**PLAINTIFF COMPLAINT FOR DAMAGES**

### **THIRD CAUSE OF ACTION**

### **Violation of the Bane Civil Rights Act (Cal. Civ. Code § 52.1)**

### **(Against All Defendants)**

73.    Plaintiff repeats and re-alleges each and every allegation in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

74.    The Bane Civil Rights Act provides a private right of action for damages against any person who "interferes," or "attempts to interfere by threat, intimidation, or coercion," with the exercise or enjoyment of a constitutional or other right under California or federal law.  California Civ. Code § 52.1 subd. (b)–(c). Public entities are vicariously liable for Bane Act violations.  *See* Gov. Code, § 815.2.  The California Supreme Court explained that the Bane Act simply requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.*, 17 Cal.4th 329, 334 (1998). Many if not all violations of fundamental rights could be so framed. *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 850 (2004) (Baxter, J., concurring).

75.    Defendants BIANCO and DOES 1-10 are liable under California Government Code § 820(a) which states that: "a public employee is liable for injury caused by his act or omission to the same extent as a private person." At all times relevant to this action, Defendants were public employees acting within the course and scope of their employment as peace and/or correctional officers with Defendant COUNTY.

76.    Defendants BIANCO and Supervisor DOES 6-10 had knowledge of the unconstitutional conditions in the jail, including the knowledge of the culpable actions of their subordinates. This knowledge, couple with inaction, constitutes acquiescence sufficient to show a supervisor personally played a role in the unconstitutional conduct. See Starr v. Baca 652 F. 3d 1202 (9th Cir. 2011).

///

**PLAINTIFF COMPLAINT FOR DAMAGES**

*Wiggins v. County of Riverside, et al.*                                          V. James DeSimone, Esq.
Case No.:  5:24-cv-02405                                                       Carmen D. Sabater, Esq.

77.     Defendant COUNTY OF RIVERSIDE is vicariously liable under the doctrine of *respondent superior* and pursuant to California Government Code § 815.2(a), which provides that "a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would. . . have given rise to a cause of action against that employee or his personal representative." COUNTY employed Defendants Officer DOES 1-5 as peace and/or correctional officers. Defendants Officer DOES 1-5 were acting within the scope of their employment with COUNTY when they committed the acts and omissions alleged herein. Courts have held that deliberate indifference to an inmate's medical needs satisfies the Bane Act's coercion requirement. (*M.H. v. County of Alameda* (N.D. Cal. 2013) 90 F.Supp.3d 889, 899.

78.     The rights of Plaintiff which were interfered with by threats, intimidation, and coercion by Defendants, include, but are not limited to:

    a)     the right to bodily integrity and protection from bodily harm (including Cal. Civ. Code § 43);

    b)     the right to Due Process;

    c)     rights under the Eighth and Fourteenth Amendments to the United States Constitution, including the right to be free from cruel and unusual punishment;

    d)     rights under Article 1, Section 7, and/or 17 of the California Constitution.

79.     As alleged herein, Defendants DOES 1-5, used threats, intimidation, coercion and violence to interfere with Plaintiff's civil rights when:

    a.     Notwithstanding knowledge that Plaintiff's medical condition warranted his placement on a bottom bunk, the Defendants assigned Mr. Wiggins to a top bunk, where he could easily, and in fact did, suffer serious injuries from a seizure related fall; and

**PLAINTIFF COMPLAINT FOR DAMAGES**

*Wiggins v. County of Riverside, et al.*                                        V. James DeSimone, Esq.
Case No.: 5:24-cv-02405                                                       Carmen D. Sabater, Esq.

b.      Defendants DOES 1-5 intentionally did not give Plaintiff the correct medication dosage at the proper times, even though Plaintiff informed unknown Defendants DOES 1-5 that he had been taking his seizure medication for the last 20 years and that he was supposed to take three pills in the morning and three pills at night. Unknown Defendants DOES 1-5 ignored Plaintiff's requests, did not give him the pills in the morning and continued to give him six pills at night.

80.      As described above, Defendants' acts and omissions were done with reckless disregard for Plaintiff's safety and well-being, and thus with reckless disregard for his civil rights. Under controlling precedent, this reckless disregard for Plaintiff's civil rights demonstrates Defendants' specific intent to deprive Plaintiff of those rights.

81.      **Plaintiff's Physical Damages**: As a proximate result of the Defendants' actions described herein, Plaintiff suffered physical pain and injuries. Mr. Wiggins suffered serious injuries, including but not limited to, head trauma, laceration, skull fracture, neck fracture, possible cervical fracture, muscle spasm, hands numbness, brain injury, and balance problem.

82.      **Plaintiff's Emotional Distress Damages**: As a proximate result of the Defendants' actions described herein; Plaintiff suffered severe emotional distress. Mr. Wiggins has also been experiencing depression and anxiety since the incident. Mr. Wiggins used to be active, go out to dinner, shopping and going to friends and family gatherings before the incident. Now, however, Mr. Wiggins does not do the same activities anymore as he is scared of falling due to the weakness in his body, he needs his wife to drive him to places, he takes multiple muscle relaxers and other medications, which make him drowsy and tired, and has difficulty with moving around. Mr. Wiggins lays in his bed or a couch most of the time during the day and cannot engage in the same activities with his children and wife as before. All of this has significantly affected Mr. Wiggins' depression, anxiety and mental health.

PLAINTIFF COMPLAINT FOR DAMAGES

*Wiggins v. County of Riverside, et al.*                                    V. James DeSimone, Esq.
Case No.: 5:24-cv-02405                                              Carmen D. Sabater, Esq.

Plaintiff has suffered, including, without limitation, depression, anxiety, shame, guilt, nightmares, flashbacks, fatigue, trouble sleeping, anger, humiliation, fear, sadness, and other forms of emotional distress.

83.    **Plaintiff's Economic Damages**: Mr. Wiggins has also suffered economic loss. For the last 10 years prior to the incident, Mr. Wiggins' job was operating forklifts, which is a job that requires strength in hands, shoulders, neck, back, and also requires climbing, having a proper balance, pushing, pulling, lifting and carrying. Mr. Wiggins was not employed immediately prior to the incident but he was in a temporary agency waiting to be assigned work. Due to his severe injuries from the fall, Mr. Wiggins is now unable to secure employment as a forklift operator or any other employment.

84.    Cal. Civ. Code §§ 52 and 52.1 Damages: Pursuant to the Bane Act (Cal. Civ. Code § 52.1©) Plaintiff is entitled to damages against each Defendant as provided in Cal. Civ. Code § 52, including, without limitation:

a.    "Actual damages" (i.e., special and general damages) as determined by a jury (*Id*. § 52(a));

b.    "Up to a maximum of three (3) times the amount of actual damages but in no case less than four thousand dollars ($4.000)" (*Id*. § 52(a));

c.    Attorney's fees as determined by the court (*Id*. § 52(a));

d.    Exemplary damages (*Id*. § 52(b)(1)); and

e.    Civil penalties of twenty-five thousand dollars ($25,000) (*Id*. § 52(b)(2)).

85.    **Punitive Damages Against Individual Defendants**: Defendants DOES 1-5, and Supervisor DOES 6-10, by engaging in the aforementioned acts and/or in authorizing and/or ratifying such acts, engaged in willful, malicious, fraudulent, intentional, oppressive and despicable conduct, and acted with willful and conscious disregard of the rights, welfare and safety of Plaintiff, thereby justifying the award of punitive and exemplary damages in an amount to be

28

**PLAINTIFF COMPLAINT FOR DAMAGES**

determined at trial.

## FOURTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (Against All Defendants)

86.    Plaintiff repeats and re-alleges each and every allegation in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

87.    Plaintiff brings this cause of action against all Defendants.

88.    Defendants DOES 1-5 are liable under California Government Code § 820(a) which states that: "a public employee is liable for injury caused by his act or omission to the same extent as a private person." At all times relevant to this action, Defendants were public employees acting within the course and scope of their employment as peace and/or correctional officers with Defendant COUNTY.

89.    Defendants BIANCO and Supervisor DOES 6-10 had knowledge of the unconstitutional conditions in the jail, including the knowledge of the culpable actions of their subordinates. This knowledge, couple with inaction, constitutes acquiescence sufficient to show a supervisor personally played a role in the unconstitutional conduct. See Starr v. Baca 652 F. 3d 1202 (9th Cir. 2011).

90.    Defendant COUNTY OF RIVERSIDE is vicariously liable under the doctrine of respondent superior and pursuant to California Government Code § 815.2(a), which provides that "a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would. . . have given rise to a cause of action against that employee or his personal representative." COUNTY employed Defendants DOES 1-5 as peace and/or correctional officers, and Supervisor DOES 6-10 as supervisory and managerial peace and/or correctional officers. Defendants DOES 1-5 and Supervisor DOES 6-10 were acting within the scope of their employment with COUNTY when they committed the acts and omissions alleged

29

1   herein.

2       91.    Under this cause of action, Defendants' conduct must be "extreme and

3   outrageous" such that it "exceed[s] all bounds of that usually tolerated in a civilized

4   community." *Hughes v. Pair* (2009) 46 Cal. 4th 1035, 1050-1051.

5       92.    As alleged herein, Defendants Officer DOES 1-5 engaged in extreme

6   and outrageous conduct when:

7       a.    Notwithstanding   knowledge   that   Plaintiff's   medical   condition

8             warranted his placement on a bottom bunk, the Defendants assigned

9             Mr. Wiggins to a top bunk, where he could easily, and in fact did,

10            suffer serious injuries from a seizure related fall; and

11      b.     Defendants DOES 1-5 intentionally did not give Plaintiff the correct

12            medication dosage at the proper times, even though Plaintiff informed

13            unknown Defendants DOES 1-5 that he had been taking his seizure

14            medication for the last 20 years and that he was supposed to take three

15            pills in the morning and three pills at night. Unknown Defendants

16            DOES 1-5 ignored Plaintiff's requests, did not give him the pills in the

17            morning and continued to give him six pills at night.

18      c.    The involved officers did not take reasonable actions to summon

19            medical care.

20      93.    Under this cause of action, Defendants must act with the intent to cause

21  Plaintiff to suffer severe emotional distress, or with reckless disregard of the

22  probability of causing Plaintiff to suffer severe emotional distress. *Id.*

23      94.    As alleged herein, Defendants DOES 1-5 acted with reckless disregard

24  that their conduct would cause Plaintiff severe emotional distress. Upon arrival at

25  the Larry D Smith Correctional Facility Banning, and multiple times thereafter,

26  Plaintiff informed the facility's medical personnel, correctional officers, and

27  unknown DOES 1-5, on several occasions, that he had a history of seizures, and

28  that if he was assigned to a top bunk bed, he could fall and suffer injuries. Although

**PLAINTIFF COMPLAINT FOR DAMAGES**

*Wiggins v. County of Riverside, et al.*                    V. James DeSimone, Esq.
Case No.:  5:24-cv-02405                                    Carmen D. Sabater, Esq.

Mr. Wiggins repeatedly requested to be assigned to a bottom bunk bed, and his condition warranted his placement on a bottom bunk, unknown DOES 1-5 assigned Mr. Wiggins to a top bunk, where he could easily, and in fact did, suffer serious injuries from a seizure related fall. Additionally, once assigned to a cell at Larry D Smith Correctional Facility Banning, Mr. Wiggins informed the correctional officers and unknown DOES 1-5 of his high blood pressure condition and that he needed his seizure medications. After being prescribed with the seizure medication, however, the correctional officers and unknown DOES 1-5 intentionally did not give Mr. Wiggins the correct medication dosage at the proper times, even though Mr. Wiggins informed said officers that he had been taking his seizure medication for the last 20 years and that he was supposed to take three pills in the morning and three pills at night. The officers and unknown DOES 1-5, however, ignored Mr. Wiggins' requests, did not give him the pills in the morning and continued to give him six pills at night.  Additionally, despite the severity of Mr. Wiggins' injuries after falling from his assigned bunk bed, the correctional officers and unknown DOES 1-5 did not promptly summon medical assistance or call an ambulance. Mr. Wiggins falling in and out of consciousness, informed unknown DOES 1-5 that he could not feel his head and neck. DOES 1-5 then yanked Mr. Wiggins on his stomach, which caused Mr. Wiggins to scream in pain, while begging them to call 911.  To add more insult to the injury, unknown DOES 1-10 kept Mr. Wiggins in handcuffs the entire time Mr. Wiggins was in the hospital bed at the Riverside County Health System Hospital.  Defendants recklessly disregarded the probability that their conduct would cause Plaintiff to suffer severe emotional distress.

95.    **Plaintiff's Emotional Distress Damages**: As a proximate result of the Defendants' actions described herein; Plaintiff suffered severe emotional distress. Prior to the incident, Mr. Wiggins was doing house chores, taking care of his children, driving them to school, playing football with family and friends, and was actively engaging in daily activities. Now, however, due to his severe injuries, Mr.

*Wiggins v. County of Riverside, et al.*                                      V. James DeSimone, Esq.
Case No.:  5:24-cv-02405                                        Carmen D. Sabater, Esq.

Wiggins is unable to drive his children to school, both because of the limitations on his mobility and because he takes multiple medications for his pain which make him drowsy and sleepy. Mr. Wiggins cannot play football anymore due to his injuries and cannot engage in activities that require driving, walking for more than a short period of time, exercising, and moving around. Mr. Wiggins has also been experiencing depression and anxiety since the incident. Mr. Wiggins used to be active, go out to dinner, shopping and going to friends and family gatherings before the incident. Now, however, Mr. Wiggins does not do the same activities anymore as he is scared of falling due to the weakness in his body, he needs his wife to drive him to places, he takes multiple muscle relaxers and other medications, which make him drowsy and tired, and has difficulty with moving around. Mr. Wiggins lays in his bed or a couch most of the time during the day and cannot engage in the same activities with his children and wife as before. All of this has significantly affected Mr. Wiggins' depression, anxiety and mental health.

96.     Plaintiff seeks all available damages under this claim.

97.     **Punitive Damages Against Individual Defendants**: Defendants DOES 1-5 and Supervisor DOES 6-10, by engaging in the aforementioned acts and/or in authorizing and/or ratifying such acts, engaged in willful, malicious, fraudulent, intentional, oppressive and despicable conduct, and acted with willful and conscious disregard of the rights, welfare and safety of Plaintiff, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

///

///

///

**PLAINTIFF COMPLAINT FOR DAMAGES**

*Wiggins v. County of Riverside, et al.*                    V. James DeSimone, Esq.
Case No.: 5:24-cv-02405                                     Carmen D. Sabater, Esq.

# FIFTH CAUSE OF ACTION

## NEGLIGENCE

### (Against All Defendants)

98.     Plaintiff repeats and re-alleges each and every allegation in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

99.     Defendants Officer DOES 1-5 are liable under California Government Code § 820(a) which states that: "a public employee is liable for injury caused by his act or omission to the same extent as a private person." At all times relevant to this action, Defendants were public employees acting within the course and scope of their employment as peace/correctional officers with Defendant COUNTY.

100.   Defendants BIANCO and Supervisor DOES 6-10 had knowledge of the unconstitutional conditions in the jail, including the knowledge of the culpable actions of their subordinates. This knowledge, couple with inaction, constitutes acquiescence sufficient to show a supervisor personally played a role in the unconstitutional conduct. See Starr v. Baca 652 F. 3d 1202 (9th Cir. 2011).

101.   Defendant COUNTY OF RIVERSIDE is vicariously liable under the doctrine of *respondent superior* and pursuant to California Government Code § 815.2(a), which provides that "a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would. . . have given rise to a cause of action against that employee or his personal representative." COUNTY employed Defendants Officer DOES 1-5 as peace/correctional officers, and Supervisor DOES 6-10 as supervisory and managerial peace/correctional officers. Defendants Officer DOES 1-5 and Supervisor DOES 6-10 were acting within the scope of their employment with COUNTY when they committed the acts and omissions alleged herein.

///

**PLAINTIFF COMPLAINT FOR DAMAGES**

*Wiggins v. County of Riverside, et al.*                    V. James DeSimone, Esq.
Case No.: 5:24-cv-02405                                      Carmen D. Sabater, Esq.

102.    Defendants DOES 1 – 10, owed a mandatory duty of care toward Plaintiff and were required to use reasonable diligence to ensure that Plaintiff was not harmed by Defendants' acts or omissions. Defendants' actions and omissions were negligent or deliberately indifferent, including but not limited to:

a.    negligently assigning Plaintiff to a top bunk despite knowledge of Plaintiff's purported history of seizures;

b.    not giving Plaintiff the correct medication dosage at the proper times, even though Plaintiff informed unknown Defendants DOES 1-5 of his correct medication dosage and the proper times to take it; and

c.    negligence or deliberate indifference in failing to provide timely medical care.

103.    SHERIFF CHAD BIANCO remains answerable for the safekeeping of the inmates in all Riverside County jails and is further responsible for matters relating to the selection, supervision, promotion, training and discipline of Riverside County jail staff, including the DOES 1-10. Defendant SHERIFF BIANCO was negligent in implementing the decisions to assign Plaintiff to a top bunk and in providing training or supervision to DOES 1 – 10.

104.    **Plaintiff's Physical Damages**: As a proximate result of the Defendants' actions described herein, Plaintiff suffered physical pain and injuries. Mr. Wiggins suffered serious injuries, including but not limited to, head trauma, laceration, skull fracture, neck fracture, possible cervical fracture, muscle spasm, hands numbness, brain injury, and balance problem.

105.    **Plaintiff's Emotional Distress Damages**: As a proximate result of the Defendants' actions described herein; Plaintiff suffered severe emotional distress. Mr. Wiggins has also been experiencing depression and anxiety since the incident. Mr. Wiggins used to be active, go out to dinner, shopping and going to friends and family gatherings before the incident. Now, however, Mr. Wiggins does not do the same activities anymore as he is scared of falling due to the weakness in his body,

34

he needs his wife to drive him to places, he takes multiple muscle relaxers and other medications, which make him drowsy and tired, and has difficulty with moving around. Mr. Wiggins lays in his bed or a couch most of the time during the day and cannot engage in the same activities with his children and wife as before. All of this has significantly affected Mr. Wiggins' depression, anxiety and mental health. Plaintiff has suffered, including, without limitation, depression, anxiety, shame, guilt, nightmares, flashbacks, fatigue, trouble sleeping, anger, humiliation, fear, sadness, and other forms of emotional distress.

106. **Plaintiff's Economic Damages**: Mr. Wiggins has also suffered economic loss. For the last 10 years prior to the incident, Mr. Wiggins' job was operating forklifts, which is a job that requires strength in hands, shoulders, neck, back, and also requires climbing, having a proper balance, pushing, pulling, lifting and carrying. Mr. Wiggins was not employed immediately prior to the incident but he was in a temporary agency waiting to be assigned work. Due to his severe injuries from the fall, Mr. Wiggins is now unable to secure employment as a forklift operator or any other employment.

107. Plaintiff seeks all available damages under this claim.

///

///

///

**PLAINTIFF COMPLAINT FOR DAMAGES**

*Wiggins v. County of Riverside, et al.*                    V. James DeSimone, Esq.
Case No.:  5:24-cv-02405                                    Carmen D. Sabater, Esq.

### SIXTH CAUSE OF ACTION

### Negligent Hiring/Supervision/ Retention/Training

### (Against BIANCO and DOES 6-10)

108.    Plaintiff repeats and re-alleges each and every allegation in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

109.    Defendants BIANCO and Supervisor DOES 6-10 are liable under California Government Code § 820(a) which states that: "a public employee is liable for injury caused by his act or omission to the same extent as a private person." At all times relevant to this action, Defendants were public employees acting within the course and scope of their employment as supervisory peace/correctional officers with Defendant COUNTY, responsible for supervising and managing Defendants DOES 1-5.

110.    Defendants BIANCO and Supervisor DOES 6-10 and COUNTY had a mandatory duty to protect Plaintiff from the wrongful actions and/or criminal and/or tortious conduct of Defendant COUNTY's employees, so as to avoid and/or prevent the exposure of Plaintiff to an unreasonable risk of harm arising therefrom.

111.    Defendants Supervisor DOES 6-10 had a duty to use reasonable care in the hiring, training and supervision of their employees, including Defendants DOES 1-5, and ensure that such employees were fit and competent to perform the work for which they were hired. This includes, but is not limited to, taking reasonable steps in hiring, screening, selecting, and supervising officers, as well as taking reasonable steps to ensure that law enforcement personnel, including supervisors, received comprehensive training on measures to protect detainees and arrestees. This duty also includes, without limitation, training and supervising officers:

a.    Not to assign a detainee/inmate to a top bunk bed when the detainee/inmate's medical history indicate a history of seizures;

36

**PLAINTIFF COMPLAINT FOR DAMAGES**

b.    Not to ignore a detainee/inmate's requests to be assigned to a bottom bunk bed when the detainee/ inmate inform the correctional officers that he needs to be assigned to a top bunk bed because of their medical condition and history of seizures;

c.    Not to violate individuals' federal constitutional rights, state constitutional rights, and state statutory rights;

d.    To provide the detainees/inmates the correct medication dosage at the proper times,; and

e.    To provide timely medical care to detainees/inmates.

112.    Defendants BIANCO and Supervisor DOES 6-10 negligently and/or recklessly breached their duty of care to Plaintiff by:

a.    Failing to carefully screen the individual Defendant DOES 1-5 as potential employees to ensure they could properly engage with detainees/inmates while respecting constitutional and statutory limits;

b.    Failing to provide proper training and supervision to the individual Defendant Deputies, including supervisory personnel, in the appropriate treatment and housing of inmates/detainees and what qualifies as cruel and unusual punishment in the context of deliberate indifference to individuals' medical condition and improper housing of inmates;

c.    Failing to provide proper training and supervision to the individual Defendant Deputies, including supervisory personnel, in the appropriate treatment of inmates/detainees and what qualifies as cruel and unusual punishment in the context of failure to provide timely medical care;

d.    Failing to provide proper training and supervision to the individual Defendant Deputies, including supervisory personnel, in the appropriate treatment of inmates/detainees and what qualifies as cruel

37

1    and unusual punishment in the context of mismanagement of

2    medications;

3    e.    Failing to properly and adequately train and supervise the individual

4    Defendant Deputies on how to treat detainees/inmates when they are

5    in jail and in custody without discriminating against them or infringing

6    on their rights;

7    f.    Failing to properly and adequately train the individual Defendant

8    Deputies on how to treat detainees/inmates without employing

9    intimidation, coercion, or intimidation;

10    g.    Failing to take reasonable, adequate, and appropriate measures to

11    ensure that the individual Defendant Deputies were fit to supervise

12    detainees and inmates, like Plaintiff;

13    h.    Failing to take reasonable and effective action to terminate or

14    discipline the individual Defendant Deputies for poor or improper

15    housing and treatment of detainees/inmates, deliberate indifference to

16    detainees/inmates' medical condition, failure to provide timely

17    medical care, and mismanagement of detainees/inmates' medication,

18    even when they had knowledge of detainees/inmates' serious medical

19    condition;

20    i.    Employing and retaining the individual Defendant Deputies, whom

21    Defendants at all times material herein knew or reasonably should have

22    known had dangerous propensities for abusing their authority and for

23    mistreating detainees/inmates by failing to follow written policies,

24    including policies related to detainees/inmates' rights to be free from

25    cruel and unusual punishment, proper housing of detainees/inmates

26    who have medical condition and need accommodations, providing

27    timely medical care to detainees/inmates, and proper management of

28    detainees/inmates' medications;

**PLAINTIFF COMPLAINT FOR DAMAGES**

*Wiggins v. County of Riverside, et al.*                                    V. James DeSimone, Esq.
Case No.:  5:24-cv-02405                                                      Carmen D. Sabater, Esq.

j.      Inadequately supervising, training, controlling, assigning, and disciplining the individual Defendant Officers, whom Defendants knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits, including deliberate or reckless indifference to inmates/detainees medical condition, failure to provide timely medical care to detainees/inmates, reckless or deliberate indifference to detainees/inmates' health and safety, mismanagement of detainees/inmates' medications, and reckless or deliberate indifference to detainees/inmates' pleas for proper housing, due to their medical condition, in their control;

k.      Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by the individual Defendant Deputies, who are officers and/or agents of COUNTY;

l.      Failing to meaningfully investigate and adequately discipline the individual Defendant Deputies, including but not limited to, for instances and complaints of cruel and unusual punishment, deliberate indifference to medical condition, poor or improper housing, failure to provide adequate medical care, and negligence;

m.      Ratifying the intentional misconduct of the individual Defendant Deputies, who are officers and/or agents of COUNTY;

n.      Having and maintaining an unconstitutional policy, custom, and practice of subjecting individuals to cruel and unusual punishment, including deliberate indifference to inmates/detainees' medical condition, poor or improper housing, failure to provide medical care, and mismanagement of medications, which also is demonstrated by inadequate training regarding these subjects. The policies, customs, and practices of DEFENDANTS were maintained with a deliberate

1    indifference to individuals' safety and rights; and,

2    o.   Condoning and encouraging COUNTY officers, including the

3         individual Defendant Deputies, in the belief that they can violate the

4         rights of persons such as Plaintiff with impunity, and that such conduct

5         will not adversely affect their opportunities for promotion and other

6         employment benefits.

7    113. Defendants Supervisor DOES 6-10 and BIANCO knew their failure to

8    adequately train their staff made it highly predictable and foreseeable that its

9    employees and agents would engage in conduct (deliberate indifference to inmates'

10   medical condition, failure to provide timely medical care, mismanagement of

11   medications, and inflicting emotional distress) that would cause harm to members

12   of the public.

13   114. The negligence of Supervisor DOES 6-10 and  Defendants BIANCO

14   and in supervising and training Defendants Officer DOES 1-5 was the direct,

15   proximate, and foreseeable cause of Plaintiff's harm. Had Defendants BIANCO and

16   Supervisor DOES 6-10 trained the individual Defendant Officers DOES 1-5

17   properly, they would have not subjected Plaintiff to cruel and unusual punishment,

18   would not have assigned Plaintiff to a top bunk bed when they knew or should have

19   known he had a history of seizures, which resulted  in Plaintiff suffering serious

20   injuries from a seizure related fall, would not have failed to provide Plaintiff timely

21   medical care, would not have mismanaged his medications, and would not have

22   inflicted severe emotional distress on Plaintiff while he was in custody and under

23   their control.

24   115. **Plaintiff's Physical Damages**: As a proximate result of the

25   Defendants' actions described herein, Plaintiff suffered physical pain and injuries.

26   Mr. Wiggins suffered serious injuries, including but not limited to, head trauma,

27   laceration, skull fracture, neck fracture, possible cervical fracture, muscle spasm,

28   hands numbness, brain injury, and balance problem.

**PLAINTIFF COMPLAINT FOR DAMAGES**

*Wiggins v. County of Riverside, et al.*                                      V. James DeSimone, Esq.
Case No.:  5:24-cv-02405                                                      Carmen D. Sabater, Esq.

116.    **Plaintiff's Emotional Distress Damages**: As a proximate result of the Defendants' actions described herein; Plaintiff suffered severe emotional distress. Mr. Wiggins has also been experiencing depression and anxiety since the incident. Mr. Wiggins used to be active, go out to dinner, shopping and going to friends and family gatherings before the incident. Now, however, Mr. Wiggins does not do the same activities anymore as he is scared of falling due to the weakness in his body, he needs his wife to drive him to places, he takes multiple muscle relaxers and other medications, which make him drowsy and tired, and has difficulty with moving around. Mr. Wiggins lays in his bed or a couch most of the time during the day and cannot engage in the same activities with his children and wife as before. All of this has significantly affected Mr. Wiggins' depression, anxiety and mental health. Plaintiff has suffered, including, without limitation, depression, anxiety, shame, guilt, nightmares, flashbacks, fatigue, trouble sleeping, anger, humiliation, fear, sadness, and other forms of emotional distress.

117.    **Plaintiff's Economic Damages**: Mr. Wiggins has also suffered economic loss. For the last 10 years prior to the incident, Mr. Wiggins' job was operating forklifts, which is a job that requires strength in hands, shoulders, neck, back, and also requires climbing, having a proper balance, pushing, pulling, lifting and carrying. Mr. Wiggins was not employed immediately prior to the incident but he was in a temporary agency waiting to be assigned work. Due to his severe injuries from the fall, Mr. Wiggins is now unable to secure employment as a forklift operator or any other employment.

118.    Plaintiffs seek all available damages under this claim.

///

///

///

**PLAINTIFF COMPLAINT FOR DAMAGES**

*Wiggins v. County of Riverside, et al.*                                    V. James DeSimone, Esq.
Case No.:  5:24-cv-02405                                    Carmen D. Sabater, Esq.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff AARON DEQUAN WIGGINS prays for judgment against Defendants as follows:

1.     Compensatory Damages, including, but not limited to economic and non-economic damages in an amount according to proof;

2.     For special damages according to proof;

3.     For punitive/exemplary damages where allowed by law;

4.     For equitable relief;

5.     For prejudgment interest;

6.     For costs of suit incurred herein;

7.     For attorney's fees as allowed by law;

8.     For civil penalties as allowed by law;

9.     For such other and further relief as this Court deems just and proper, and appropriate.

Date: November 12, 2024              **V. JAMES DESIMONE LAW**

By: _____
                                          V. JAMES DESIMONE, ESQ.
                                          CARMEN SABATER, ESQ.
                                          MELIKA AMINI, ESQ.

                                          Attorneys for PLAINTIFF,
                                          AARON WIGGINS

**PLAINTIFF COMPLAINT FOR DAMAGES**

*Wiggins v. County of Riverside, et al.*                    V. James DeSimone, Esq.
Case No.:  5:24-cv-02405                                    Carmen D. Sabater, Esq.

# DEMAND FOR JURY TRIAL

PLAINTIFF hereby demands a trial by jury.

Date: November 12, 2024                    **V. JAMES DESIMONE LAW**

By: _____

V. JAMES DESIMONE, ESQ.
CARMEN SABATER, ESQ.
MELIKA AMINI, ESQ.

Attorneys for PLAINTIFF,
AARON WIGGINS

**PLAINTIFF COMPLAINT FOR DAMAGES**

*Wiggins v. County of Riverside, et al.*                    V. James DeSimone, Esq.
Case No.:  5:24-cv-02405                                    Carmen D. Sabater, Esq.